J-A14003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL LAMONT DURHAM | : | |
| | : | |
| Appellant | : | No. 351 WDA 2018 |

Appeal from the Judgment of Sentence December 19, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0003964-2015

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                                **FILED JUNE 25, 2019**

Paul Lamont Durham appeals from the judgment of sentence imposed on December 19, 2016, in the Court of Common Pleas of Allegheny County, following his jury convictions of one count of murder in the second degree, two counts of robbery, and one count of criminal conspiracy.[1]  On appeal, Durham claims that the trial court erred in denying his motion to suppress, and that his conviction was against the weight and sufficiency of the evidence. For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's December 20, 2018 opinion.

> At approximately 3:15 pm on October 14, 2014, [Tina] Chapple ["Chapple"] was at the residence she shared with her boyfriend,

_____

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(I), and 903, respectively.

Leonard Butler, (hereinafter referred to as "Butler"), when he asked her to come down from the second floor to the living room. When she arrived in the living room, she observed two males with guns who had partially covered their faces with masks. One of the individuals who Chapple identified as the meaner of the two, [later identified as co-defendant Derek Lee ("Lee")], forced Butler into the basement while the other male, later determined to be Durham, stood in the living room with Chapple. Eventually Chapple was forced down into the basement by Durham and was forced to get down on her knees next to Butler. Lee was yelling at Butler to give up his money and Butler told him that he had no money. Wh[en] the defendants did not recover any money from Butler, they used a stun gun on him and again demanded money. Butler told the defendants to go look through his house stating that he did not have anything. At that point[,] Lee pistol-whipped Butler on the left side of his head and then took his watch and ran up the steps while Durham remained in the basement and stood guard over Chapple and Butler. Shortly thereafter, Butler and Durham struggled over the gun and one shot was fired which struck Butler and Durham then ran up the stairs and out of the house. The police were called and after interviewing Chapple they began canvassing the neighborhood for witnesses.

Henry Leacock, (hereinafter referred to as "Leacock"), called in two reports to the police with respect to suspicious activity in the area where the shooting occurred. Leacock was able to provide a license plate of a motor vehicle which was determined to be a Nissan Altima that had been rented from Hertz Rental by Lee. Leacock was also able to provide detailed descriptions of both males.

During the course of the police investigation, they developed a lead as to who was the shooter that caused the death of Butler and then prepared photo arrays which were shown to Chapple who identified Durham as the individual who shot Butler.

Trial Court Opinion, 12/20/2018, at 3-4.

A lengthy jury trial took place in September 2016. On September 26, 2016, the jury convicted Durham of the aforementioned offenses. On December 19, 2016, the trial court sentenced Durham to life imprisonment

followed by a consecutive term of 10 to 20 years' imprisonment. After receiving leave of court, Durham filed a post-sentence motion *nunc pro tunc*. The trial court denied the motion on February 9, 2018. The instant, timely appeal followed.[2][3]

In his first issue, Durham argues the trial court erred in failing to suppress Ms. Chapple's identification of him through an unduly suggestive photo array. Our standard of review of an order denying a motion to suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law

---

[2] On March 14, 2018, the trial court ordered Durham to file a concise statement of errors complained of on appeal. Because of a breakdown in the court process, the lower court docket does not show that he filed the Rule 1925(b) statement. However, on February 22, 2019, the parties filed a stipulation in this Court that Durham timely filed his Rule 1925(b) statement on April 4, 2018. *See* Stipulation to Supplement Record Pursuant to Pa.R.A.P. 1926(B)(2), 2/22/2019, at 1-2. On December 20, 2018, the trial court filed an opinion.

[3] The co-defendant, Derek Lee, who the Commonwealth tried jointly with Durham, does not have an appeal pending before this panel.

to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

***Commonwealth v. Kemp***, 195 A.3d 269, 275 (Pa. Super. 2018) (citation and quotation marks omitted).

> Further,
>
> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics.

***Commonwealth v. Fulmore***, 25 A.3d 340, 346 (Pa. Super. 2011) (quotation marks and citations omitted), *appeal denied*, 34 A.3d 827 (Pa. 2011).

Here, Durham argues that the persons in the photo array did not have similar facial characteristics to him and that the police placed his photograph in the same location in the array as they placed co-defendant Lee's in a photo array that Chapple viewed several months earlier. Durham's Brief, at 24. However, Durham waived these claims.

In his pretrial motion to suppress, Durham did not raise these issues. Omnibus Motion, 11/20/2015, at unnumbered pages 3-4. Instead, he argued that the police officers made unduly suggestive comments, which influenced

Chapple's selection and that she did not view the photo array in a consistent manner.[4] *See id.*

We have held that, "appellate review of [a ruling on] suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." *Commonwealth v. Little*, 903 A.2d 1269, 1272–1273 (Pa. Super. 2006); *see also Commonwealth v. Thur*, 906 A.2d 552, 566 (Pa. Super. 2006) ("When a defendant raises a suppression claim to the trial court and supports that claim with a particular argument or arguments, the defendant cannot then raise for the first time on appeal different arguments supporting suppression."), *appeal denied*, 946 A.2d 687 (Pa. 2008). Therefore, because Durham did not raise the issues here in his motion to suppress, he waived his first claim.[5]

---

[4] We note that, in his Rule 1925(b) statement, Durham baldly challenged the denial of his motion to suppress and did not specify the basis for his challenge. *See* Defendant's Concise Statement of Matters Complained of on Appeal Pursuant to Rule Pa.R.A.P. 1925(b), 4/04/2018, at 1. Because of this, in its opinion, the trial court discussed the issues raised in the motion to suppress and not the claims that Durham now raises on appeal. *See* Trial Ct. Op., at 4-6.

[5] Further, even if Durham had raised his claims in the trial court, we note that he has failed to ensure that a copy of the photo array, which he argues was unduly suggestive, was included in the certified record. "Appellant has the duty to ensure that all documents essential to his case are included in the certified record." *Commonwealth v. Walker*, 878 A.2d 887, 888 (Pa. Super. 2005); *see Commonwealth v. Manley*, 985 A.2d 256, 263–264 (Pa. Super. 2009) ("Because we have not been furnished with a copy of the photo array

In his second issue, Durham claims that the evidence was insufficient to sustain the verdict because the evidence did not establish that he was the person who committed the crimes. Durham's Brief at 27-29. Specifically, Durham maintains that the identification made by Chapple was "weak and inconclusive." *Id.* at 28. We disagree.

Our standard of review of a sufficiency claim is well settled:

Our standard for evaluating sufficiency of the evidence is whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable [factfinder] to find every element of the crime beyond a reasonable doubt. [T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct. Moreover, [t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Shull*, 148 A.3d 820, 844 (Pa. Super. 2016) (citation omitted).

Regarding the sufficiency of evidence of identification, the Pennsylvania Supreme Court has instructed:

Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. The evidence of identification, however, needn't be positive and

---

in question in the record, the issue challenging suppression of the photo array is deemed waived."), *appeal denied*, 996 A.2d 491 (Pa. 2010). Therefore, Durham also waived his challenge to the out-of-court identification based on the photo array for this reason.

certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Hickman*, 309 A.2d 564, 566 (Pa. 1973) (citations omitted). We have held that a single, positive identification by one eyewitness is enough to sustain a conviction. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (citations omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014).

Based on our review, we conclude that Durham's claim that the evidence was insufficient to prove he was the perpetrator warrants no relief. Durham seeks to have this Court review the evidence in the light most favorable to him. However, our standard of review requires us to view the evidence in the light most favorable to the verdict-winner, the Commonwealth. *See Shull*, *supra*. Here, Chapple positively identified Durham, both in a photo array and at trial, as one of the men who held her at gunpoint and as the man who shot Butler. N.T. Trial, 9/08/2016, at 379-380, 410-418. She testified that she was 100% certain of her identification of Durham. *Id.* at 421-424. Moreover, as the trial court discussed in its opinion, there was sufficient circumstantial evidence to connect Durham to the crime, including Leacock's description, which matched that of Chapple, of the two men he observed behaving suspiciously near the scene of the crime and at the time of the crime. *See* Trial Ct. Op., at 8-10. Moreover, the license plate Leacock gave the police of the car he observed the men use, matched that of a car rented by co-

defendant Lee. ***See id.*** Accordingly, Durham's sufficiency claim fails. ***See***

***Trinidad***, ***supra***.

In his third issue, Durham contends that the verdict was against the weight of the evidence.[6] Durham's Brief, at 30-36. A weight of the evidence claim concedes the sufficiency of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). A weight claim addresses the discretion of the trial court. ***Id.*** at 752 (citation omitted). On review, the appellate court decides whether the trial court abused its discretion when ruling on the weight claim; it does not consider the underlying question of whether the verdict was against the weight of the evidence. ***Id.*** at 753. We will only find an abuse of discretion where the verdict is so contrary to the evidence as to shock one's sense of justice. Our review of a challenge to the weight of the evidence supporting the verdict is settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists

---

[6] Durham preserved his weight of the evidence claim by filing a post-sentence motion. [Durham's] *Nunc Pro Tunc* Post-Sentence Motion, 10/04/2017, at 5-6.

of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

Durham's weight of the evidence claim is largely a restatement of his sufficiency challenge, which we discuss *supra*. He views the evidence in the light most favorable to himself, and does not explain how the trial court abused its discretion in denying his weight claim. Rather, his argument consists of his bald allegations that Chapple's identification testimony was unreliable; that Leacock's description of the men did not entirely match Chapple's; that the jury should have credited the testimony of defense witness Sean Ball; and that they should have credited the testimony of the defense's expert witness on identification. Durham's Brief, at 30-36. The trial court, in its opinion, discusses, in detail, why it did not find that the verdict was against the weight of the evidence. Trial Ct. Op., at 12-15. Durham provides us with no basis upon which to disagree. Accordingly, his weight claim fails.

For all the foregoing reasons, we affirm Durham's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

- 9 -

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/25/2019